Troy P. Foster (#017229)
Megan Weides (#033552)
**The Foster Group, PLLC**
902 W. McDowell Road
Phoenix, Arizona  85007
Tel: 602-461-7990
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## IN THE DISTRICT OF ARIZONA

| | |
|---|---|
| Guadalupe A. Lopez, a married man,<br><br>Plaintiff,<br><br>vs.<br><br>Premier Fuel Distributors, a foreign Corporation;<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

For his Complaint against Defendant Premier Fuel Distributors (the "Company"), Plaintiff Guadalupe A. Lopez ("Mr. Lopez") alleges as follows:

### Background Allegations and Jurisdiction

1. At all times relevant to this Complaint, Mr. Lopez resided in Yuma County, Arizona, and is a citizen of the State of Arizona.

2. At all times relevant to this Complaint, the Company was a California Corporation authorized to conduct, and conducting business, in the State of Arizona.

3. At all times relevant to this Complaint, the Company had a physical location in Arizona at 51 E. 10th Street, Yuma, Arizona 85364.

4. The Defendant was an employer as defined in 42 U.S.C. § 2000, 29 U.S.C. § 152, and Arizona state law.

5. Mr. Lopez was an employee of the Defendant, as that term is defined in 42 U.S.C. § 2000e-f, 29 U.S.C. § 152, and Arizona state laws.

## A Long, Documented History of Safety Issues

6. Mr. Lopez was hired as a truck driver for the Company on June 23, 2017, after it was acquired from Evans Dedicated Systems, which Mr. Lopez worked at for nearly twelve years.

7. A little over a year into his employment in 2018, one of the Company's drivers was killed in an accident and another in a very serious accident.

8. Mr. Lopez began talking to other drivers and realized there were many safety concerns amongst the group.

9. The main concerns were driving faulty vehicles and that the supervisor, Horacio Martinez Jr., had been pressuring drivers to commit violations on hours of service.

10. Mr. Lopez collected the drivers concerns and presented a list to both Mr. Martinez and the Company's CEO, Hugo Rodriguez, during a meeting.

11. Mr. Martinez accused Mr. Lopez of lying about the safety concerns.

12. Mr. Lopez told Mr. Rodriguez that he was going to report to the labor board "these serious violations that Martinez was encouraging the drivers to commit."

13. Immediately after the meeting, Mr. Martinez confronted Mr. Lopez and threatened to have his Department of Transportation ("DOT") physical disqualified[1].

14. Other drivers saw what was happening and told Mr. Rodriguez to intervene, which he did.

15. Both Mr. Rodriguez and Mr. Martinez claimed that they would have the problems fixed and Mr. Lopez agreed that if that was done, he would not need to report anything to any agency.

16. After that, Mr. Lopez noticed Mr. Martinez did not call him in when trucks would break down or work was slow.

---

[1] Mr. Lopez is unable to hear in his left ear and had shared his fears of not being able to drive because of it.

2

17. In March of 2019, Mr. Lopez was talking to other drivers about not being called into work and discovered several of the other drivers who had signed the list of safety concerns were the ones being left out of work.

18. On March 16, 2019, Mr. Lopez filed a complaint with the Federal Motor Carrier Safety Administration ("FMCSA") concerning drivers being forced to drive above limits, trucks being overweight, and drivers being forced to alternate routes to avoid scales.

19. On March 29, 2019, Mr. Lopez filed a complaint with the National Labor Relations Board ("NLRB") for retaliation after engaging in concerted activity concerning medical disqualification and raising safety concerns.

20. In April of 2019, Mr. Lopez spoke with the Mr. Rodriguez and asked if he could come to Yuma and speak with Mr. Martinez about the safety issues and retaliation but was never given an answer.

21. Seeing no changes, Mr. Lopez filed a discrimination complaint with the Arizona Department of Occupational Safety and Health ("ADOSH") regarding retaliation and unsafe work conditions in May of 2019.

22. In July 2019, the NLRB had found merit to some of Mr. Lopez's claim and Company was preparing to enter into a settlement agreement.

23. Mr. Martinez bragged to Mr. Lopez that the NLRB case was being closed and told Mr. Lopez to leave if he was not happy there.

24. As a result, Mr. Martinez told other drivers to not talk about safety issues with other drivers.

25. The driver that told Mr. Lopez that Mr. Martinez was instructing drivers not to talk to each other was terminated not long after that.

26. This prompted Mr. Lopez to file another complaint with the NLRB on July 24, 2019 for this behavior.

27. On August 20, 2019, the NLRB determined that the Company violated the Act by directing employees to refrain from engaging in protected concerted activities,

interrogating employees about said activities, and threatening employees with negative consequences, including discharge, for engaging in protected activities.

28. The parties entered into an agreement concerning engaging in protected concerted activities on August 23, 2019.

29. To Mr. Lopez's knowledge and belief, nothing resulted from the complaints with FMCSA or ADOSH.

30. For the remainder of 2019, Mr. Lopez laid low and did not make any subsequent complaints, but instead kept personal documentation of safety issues.

### A Zebra Does Not Change its Stripes

31. On January 27, 2020, all the drivers were called into a safety meeting with Mr. Martinez.

32. Mr. Martinez instructed the drivers to not report the driver's vehicle inspection report ("DVIR") on the electronic logging device because of "technical issues."

33. The drivers were instructed to provide DVIR on paper or text it to Mr. Martinez if there were issues with equipment.

34. Drivers were also instructed to take photographs of issues that needed service to Mr. Martinez, which resulted in delayed or never completed service.

35. Not believing that Mr. Martinez was actually reporting DVIR, Mr. Lopez purchased his on DVIR paper to keep his own log of safety issues.

36. The safety issues and service requests that Mr. Lopez did make to Mr. Martinez went ignored.

37. This pattern continued throughout February and March of 2020- Mr. Lopez expressing safety concerns and Mr. Martinez dismissing them.

### Mr. Martinez's Retribution

38. In mid-March of 2020, Mr. Lopez had noticed the trucks were more and more overweight and he repeatedly asked Mr. Martinez to adjust the cargo weight, to no avail.

39. Mr. Lopez began inspecting the trucks and trailers and noticed that nearly all of them had significant damage to the delivery hoses.

40. The delivery hoses bring the fuel from the gas station pump to the truck's fuel tank and almost all of them were leaking fuel, creating many safety hazards.

41. Mr. Lopez began taking photographs of all the damaged hoses and mentioned he was going to report it to ADOSH.

42. Another driver heard Mr. Lopez's statement and told Mr. Martinez what Mr. Lopez was doing.

43. A day or two after that, Mr. Lopez's hours were reduced on March 22, 2020, down to 2 to 3 days a week.

44. He was one of the few, possibly the only, senior drivers who had their hours cut at this time on March 22.

45. The newer, lesser experienced drivers who did not question safety were still working 4 to 5 days a week.

46. On April 16, 2020, Mr. Lopez texted Mr. Martinez along with the senior drivers, the same drivers who were on the list of safety complaints from January 2019, and inquired about their employment status.

47. In this message, Mr. Lopez suggested that Mr. Martinez layoff the newer drivers so the senior drivers could work again.

48. In response to this message, Mr. Martinez terminated Mr. Lopez and all the members in the group chat.

49. All these members had spoken up about safety concerns at some point throughout their employment.

50. The newer drivers remained employed and the Company has since been re-hiring drivers but has never called Mr. Lopez back to work.

## **Allegations Regarding Damages**

51. Mr. Lopez has suffered tangible lost wages as a result of Defendants' actions.

52. As a result of the termination, Mr. Lopez has suffered from depression and anxiety, and is unable to cope at times from the financial stress.

# LEGAL CLAIMS

## Count One: Violation of Arizona Employment Protection Act

53. Mr. Lopez reincorporates allegations in paragraphs 1-52 as if fully set forth here.

54. Defendants were employers for purposes of the Act.

55. Mr. Lopez was Defendant's employee for purposes of the Act.

56. Mr. Lopez reasonably believed that the Company was violating state law with respect to mandating overtime hours for drivers, overweight cargo, operating unsafe equipment, and threatening termination when speaking to each other about issues.

57. Mr. Lopez reported his concern to Mr. Martinez, a person with authority to investigate the information provided and take action.

58. Mr. Lopez reported his concerns to ADOSH, an entity with authority to ensure violations of the state laws are not being committed.

59. Mr. Lopez was terminated for reporting these concerns.

60. Mr. Lopez is entitled to lost wages in the form of back pay and front pay,

61. Mr. Lopez is entitled to his costs and reasonable attorneys' fees for Defendant's violations.

## Count Two: Retaliation

62. Mr. Lopez reincorporates allegations in paragraphs 1-61 as if fully set forth here.

63. The federal and state civil rights act prohibits any person from retaliating against an employee that engages in protected activity.

64. Mr. Lopez engaged in protected activity when he complained about the safety issues to FMCSA and ADOSH.

65. Mr. Lopez engaged in protected activity when he reported violations of the National Labor Relations Act to the NLRB.

66. Defendants subsequently retaliated against Mr. Lopez by way of example of: (1) reducing Mr. Lopez's hours; (2) threatening his job; (3) disregarding concerns about other legitimate complaints, and (4) terminating his employment.

67. Mr. Lopez has suffered lost wages as a result of the retaliation.

68. Mr. Lopez is entitled to damages for Defendants' violations.

69. Mr. Lopez is also entitled to his costs and reasonable attorneys' fees incurred.

## Conclusion

**THEREFORE**, Mr. Lopez respectfully requests the following relief:

A. An award of lost wages, back and front pay, against Defendants for their wrongful termination and retaliation;

B. An award of Mr. Lopez's costs and attorneys' fees; and

C. All other appropriate relief.

**DATED** this 23rd day of October, 2020.

**The Foster Group, PLLC**

*/s/ Megan Weides*
Troy P. Foster
Megan Weides
902 W. McDowell Road
Phoenix, Arizona 85007
*Counsel for Plaintiff*